MARGARET A. WALSH, DEFENDANT IN ERROR, v. THE BOARD OF EDUCATION OF NEWARK, PLAINTIFFS IN ERROR.

Submitted May 11, 1905—Decided March 5, 1906.

1. An issue was directed on an appeal from the report of commissioners ascertaining the compensation to be made on the taking of land for public use, and, at the trial of the issue, it appeared that a witness produced and sworn had had no opportunity of observation in the locality where the land lay, save in a single instance. *Held,* that his opinion as to the value of the land at the time of the taking was rightly rejected. It could not be received in evidence because of his lack of special knowledge. *Riley v. Camden and Trenton Railway Co.,* 41 *Vroom* 289, followed and its principle applied.

2. When the issue was called for trial, more than twenty days after the filing of the report of the commissioners, and the value of the land and the damages for the taking stood, *prima facie,* at least, as ascertained by such report, a motion was made on behalf of the

original petitioners (respondents) for leave to abandon the proceedings on payment of the owner's (appellant's) costs and expenses, and was denied. *Held*, that such ruling was right, the situation of the proceedings as disclosed by the record being considered. In such a case the act of March 20th, 1900 (*Pamph. L., p. 85, § 15*), is controlling, and limits the abandonment to twenty days after the filing of the report.

3. The cases of *Browning* v. *Camden and Woodbury Railroad Co.,* 3 *Gr. Ch.* 47; *Metler* v. *Easton and Amboy Railroad Co.,* 8 *Vroom* 223; *Henderson* v. *Orange,* 9 *N. J. L. J.* 71; *Johnson* v. *Baltimore and Ohio Railway Co.,* 18 *Stew. Eq.* 454, and *Ringle* v. *Freeholders,* 27 *Vroom* 661, considered and explained.

4. Whether, notwithstanding the statute above referred to, the original petitioners may abandon the proceedings on payment of costs and expenses, after the value of the land and the damages have been ascertained by the verdict of the jury and the judgment, is a question not presented by the record, and no opinion is expressed thereupon.

On error to the Circuit Court of the county of Essex.

The board of education of the city of Newark, Essex county, having or claiming power to take land for public use, determined to acquire a certain parcel of land on the easterly side of South Ninth street, in the said city of Newark, Essex county, belonging to Margaret A. Walsh, and being unable to acquire such land by agreement with the said owner took proceedings for the condemnation thereof, in accordance with the statute entitled "An act to regulate the ascertainment and payment of compensation for property condemned or taken for public use (Revision of 1900)," approved March 20th, 1900.

Upon the petition presented by the board of education to the Chief Justice of the Supreme Court, such proceedings were had that, by their report, dated June 28th, A. D. 1904, and filed in the office of the clerk of Essex county on June 30th, A. D. 1904, the commissioners appointed for that purpose appraised the value of the parcel of land to be taken and assessed the damages sustained by the taking thereof at the sum of $1,000. This report seems to have been satisfactory to the board of education, but it was not so to Margaret A. Walsh. Within the ten days limited she appealed

to the Circuit Court of the county of Essex, and thereupon the court (Circuit Judge Adams), by a rule entered September 20th, A. D. 1904, directed an issue between the parties, for trial by jury, and fixed October 20th as the day for the trial. By another rule, allowed December 3d, A. D. 1904, a struck jury and a view of the premises were ordered, and December 19th fixed as the day for the trial of the issue.

When the issue was called for trial on the day last mentioned, the attorney of the board of education (the respondents) moved for leave to discontinue the condemnation proceedings on the payment of the costs and reasonable expenses of Margaret A. Walsh (the appellant), and the motion was denied by the court on the ground that the statutory time within which abandonment might be made had expired. To this ruling an exception was prayed and sealed. The trial then proceeded, and in the course thereof one William Robotham was sworn for the respondents, and his direct examination was, in part, as follows:

"*Q.* Did you ever own the property that is now being condemned?

"*A.* I did.

"*Q.* When did you sell it, and to whom, if you remember?

"*A.* I sold it to Mr. Lopez, about a year ago.

"*Q.* How long had you owned that property?

"*A.* Six or seven years, I guess.

"*Q.* And are you familiar with the property?

"*A.* Yes, sir.

"*Q.* Did you ever own any other property around there?

"*A.* No, sir.

"*Q.* Can you tell me what, in your opinion, that property is worth?"

On objection by the attorney of the appellant, this question was overruled on the ground that the witness did not appear to be qualified to speak as an expert. To this ruling, also, an exception was prayed and sealed.

The jury assessed the value of the land and the damages sustained at $2,057.33, and upon this finding judgment final

was entered in the Circuit Court of Essex county on December 19th, A. D. 1904.

The judgment being removed directly into the Court of Errors and Appeals, error is assigned in the following particulars:

Because the application for leave to abandon the proceedings to condemn the property of Margaret A. Walsh and to discontinue the said proceedings upon payment of her costs and expenses was denied by the court.

Because the testimony of William Robotham as to his opinion about the value of the land to be condemned was excluded upon objection by the owner.

For the plaintiffs in error, the original petitioners and respondents below, *Malcolm MacLear*.

The intent of the statute of March 20th, 1900, was to limit the time of discontinuing to twenty days after the commissioners made their report only in cases where no appeal is taken.

The theory of the discontinuance is that the party or agent desiring the property is taking it for the public good, and should have a right to say whether the price awarded shall be paid. If the agent has no such right, it might result in detriment to the public.

For the defendant in error, owner and appellant below, *Herbert Boggs*.

The Circuit judge had no jurisdiction to hear and determine the motion to discontinue the condemnation proceedings.

The respondents had no right to discontinue the proceedings at the time when the motion was made. The statute limits the right to abandon to the twenty days after the filing of the commissioners' report. Where the condemning party allows this time to elapse without action, it is to be assumed that the decision is to take the property, subject to the uncertainty of the appeal.

The testimony of Robotham was properly excluded. He

had no expert knowledge and his opinion was of no possible value.

Upon the case as stated above, the opinion of the court was delivered by

GREEN, J.    1. Taking up, first, the second assignment of error, we observe that it was not urged by the plaintiffs in error on the argument, hence this court is not obliged to consider it.   See *Loper* v. *Somers,* 42 *Vroom* 657 (1904), and cases cited at *p.* 661.   Nevertheless, it may be remarked that if it had been so urged the allegation of error would have been found unmaintainable.

To reach this conclusion it would not be necessary to distinguish between expert testimony and opinion evidence, which are differentiated by Professor Wigmore in his philosophical work on evidence (1 *Wigm. Evid.*, §§ 555, 557), and by Justice Garrison, in *Koccis* v. *State,* 27 *Vroom* 44, 47 (1893), inasmuch as both types of evidence require opportunity and observation extending beyond a single or particular instance.

From the examination of Mr. Robotham, it appeared merely that he had owned the parcel of land in question for six or seven years, and had sold it a year before the trial for $1,200. Hence, to say nothing of personal capacity or of study or practice, there were shown on his part no opportunity to observe, and no actual observation, in the locality of the land which fitted him to speak of its value.   The witness had no special knowledge of values, which, being imparted to the jurors, could aid them in the discharge of their duty.

In ruling out the question which sought Robotham's opinion as to the value of the land in December, 1904, the Circuit judge was fully justified by *Riley* v. *Camden and Trenton Railway Co.,* decided a few months earlier in this court, and reported in 41 *Vroom* 289 *et seq.*   See, also, *Haulenbeck* v. *Cronkright,* 8 *C. E. Gr.* 407 (1873) (at *p.* 413) ; *Laing* v. *United New Jersey Railroad and Canal Co.,* 25 *Vroom* 576 (1892) (at *p.* 577).

2. Taking up the first assignment, we note that error is

alleged in the denial of the motion by the attorney of the
board of education for leave to abandon the condemnation
and to discontinue the proceedings upon payment of the
owner's costs and expenses. The legal argument in support
of the allegation of error is that the board of education in
taking the land is, or should be, acting for the public good,
and should therefore have a right to say whether the price
awarded should be paid; and that, if such right should be
denied, detriment to the public might ensue.

We would not forget that there may be weighty matters
involved in this case, and we would never refrain from rightly
conserving the public weal; but we remark that the argument
made is, in form, simply the argument *ab inconvenienti,* and
that, although we have the authority of Lord Coke (*Co. Litt.*
66) for saying *"argumentum ab inconvenienti plurimum
valet in lege,"* yet it must be borne in mind that "if the law
be clear inconveniences afford no argument of weight with
the judge; the legislature alone can remedy them." See
*Broom Max.* (*7th Eng. ed.*) 147; *Pike* v. *Hoare,* 2 *Eden*
182 (1763) (at *p.* 184). Neglecting, for the time, as ele-
ments of decision, that it nowhere appears in the record that
the board of education had resolved to abandon the proceed-
ings, or having so resolved had applied to a justice of the
Supreme Court to determine the reasonable costs and ex-
penses of the owner, or had filed or offered to file a discharge
of her land from the lien of the notice of *lis pendens* (all of
which things might be worthy of consideration), we entertain
the opinion that there is a law which is applicable to the case
in hand, and that its meaning is clear. The situation at the
time of the motion was that a petition had been presented
for the appointment of commissioners to fix the compensation
to be paid for the land, and such proceedings had been had
thereupon that the report of the commissioners had been
made and filed, and that an appeal had been taken from this
report and an issue between the parties framed for trial;
nevertheless, that the value of the land and the damages for
the taking stood, *prima facie,* at least (see *Pamph. L.* 1900,
*p.* 85, § 14), at the sum ascertained by the commissioners—

$1,000. The statute was, at the time of the motion, and still is, as follows: "Any proceeding to condemn, taken under this act, may be abandoned within twenty days after the filing of the report of the commissioners, upon payment to the owners and other parties who have appeared before the commissioners of their reasonable costs and expenses," &c. See *Pamph. L.* 1900, *p.* 85, § 15, at middle.

The counsel for the plaintiffs in error, pursuing his argument already referred to, insists that the time limit of twenty days prescribed by this statute is applicable only in cases where no appeal is taken from the report and award of the commissioners, but we cannot agree with his reading of the act; we think it applicable to the present case, and we think its meaning plain. The statute conserves the public weal, in that it permits a public agent, empowered to purchase for the public use, to abandon all proceedings when it becomes apparent that the project is to the public detriment, but it fixes a reasonable period within which the power of determination must be exercised, and that period, in the situation disclosed by the present record, is twenty days after the filing of the commissioners' report.

If it be necessary to pass beyond the mere interpretation of this statute, it may be said that our view of its meaning puts it in harmony with previous decisions. *In the matter of the Water Commissioners of Jersey City,* 2 *Vroom* 72 (1864), it was held that when public officers, acting under statutory authority, have proceeded to condemn lands for public uses, and an appraisement of damages has been made but not confirmed, such proceedings may be discontinued without the assent of the landowners. This decision is put upon the ground (see *p.* 75) that "if it should turn out, before the transaction is closed, that the interests of the public will not be promoted, but, on the contrary, will be impaired by concluding the purchase, it would seem to follow that the public agent ought not to be compelled to proceed." Nevertheless, the decision concedes that there is a point in the proceedings where the rights of both parties are definitely established, and where the contract becomes obligatory; and, according

to the statute then under consideration, the definitive act was held to be the confirmation of the commissioners' report. In *Mabon* v. *Halsted, Director,* 10 *Vroom* 640 (1877), it was decided that a public agent should have a right of election, whether to take land or not, after the price is fixed, unless such right were expressly taken away by the legislature. This determination also went upon the ground of the public good, but it was admitted that the right of election was to be allowed only "to some reasonable extent." In the statute then examined, no confirmation of the report was required, but either party was permitted to appeal within sixty days after the filing of the report, and a refusal to accept the land as condemned, by vote of the board of chosen freeholders of Hudson, at a meeting held within the sixty days, was, in view of the statute, accounted reasonable and effective. In *O'Neill* v. *Freeholders of Hudson,* 12 *Vroom* 161 (1879), the same proceedings were under review in this court, in a different suit or proceeding, and the unanimous opinion of this court upon the points considered was so far similar to the opinions expressed in the earlier cases in the Supreme Court that it would serve no good end to restate it even in a condensed form. Reference may also be profitably made to *Regina* v. *Commissioners of Woods and Forests,* 15 *Ad. & E. (N. S.)* 761 (1850) ; 2 *Lew. Em. Dom.* (2d ed.), §§ 655, 657 ; 2 *Dill. Mun. Corp.* (4th ed.), §§ 608, 610, and note.

We think that, on the case as it stood before him, the ruling of the Circuit judge upon the motion was right. The statute of March 20th, 1900 (*Pamph. L., p.* 85, § 15), already quoted, controlled his powers and action, and upon the record we also are thereby bound.

3. There are a few decisions of the courts of this state which in point of language seem at first sight to militate against our opinion, and they deserve some mention in the interest of clearness. These cases, we think, may easily be harmonized by the well-known rule *secundum subjectam materiam, verba intelligenda sunt.* See 1 *Bl. Com.* *229 ; *Maxw. Int. Stat.* 50. It is not meant to intimate that any of the cases following were wrongly decided, or to minimize

their ·value. Simply is it intended now to show that those past decisions, rightly considered, are not inconsistent with this, and that if any words or phrases employed in them seem to be of wider import than the occasion of the employment demanded, they should be read in the light of the rule stated.

In *Browning* v. *Camden and Woodbury Railroad Co.,* 3 *Gr. Ch.* 47 (1837), it was said (at *p.* 55) that the very act of appealing sets aside the report of the commissioners; but that was said with a view to holding that a railroad company whose right to enter depended upon paying the value of the land and damages could not do so while as yet the value of the land and damages were entirely open, and without any such statute in mind as we have been interpreting. In *Metler* v. *Easton and Amboy Railroad Co.,* 8 *Vroom* (37 *N. J. Law*) 222 (1874), it was said (at *p.* 226) that, by the company's appeal, the award of the commissioners was superseded; but that was said when reasoning upon the effect of the appeal on the power of the owner to enforce payment of the compensation for his property, a question not now before us. In *Henderson* v. *City of Orange,* 9 *N. J. L. J.* (at *p.* 72) (1886), Justice Depue said that the appeal superseded the commissioners' appraisement, but that statement merely introduced an instruction to the jurors that they were to make the assessment of damages as if the question had not been heard by the commissioners and without regard to the amount assessed by them. In *Johnson* v. *Baltimore and Ohio Railway Co.,* 18 *Stew. Eq.* 454 (1889), cited and explained in *Waite* v. *Port Reading Railway Co.,* 3 *Dick. Ch. Rep.* 346 (1891) (at *p.* 350), and in *Packard* v. *Bergen Neck Railway Co., Id.* 281 (1891) (at *p.* 286), per Vice Chancellor Pitney, it is said (see 18 *Stew. Eq.,* at *p.* 459) that the appeal operates as a *supersedeas* upon the award of the commissioners; but this was so held in considering the force and effect of the General Railroad act of 1873, sections 12 and 13 (*Rev. Stat.* 1877, *pp.* 928, 929), which act is materially different from the statute now before the court. In *Ringle* v. *Freeholders of Hudson,* 27 *Vroom* 661 (1894), this court said (at *p.* 665) that, so long as the appeal stands, if it be concluded by judgment, it

supersedes the award of the commissioners; but these words are to be read in connection with the further statement that the appeal becomes a new means for the ascertainment of the just compensation which is to be made to the landowner. Furthermore, in weighing past cases, it must be remembered that the original actor in the present case was a public agent, and that the constitution of New Jersey, article 4, section 7, paragraph 8, has no applicability.

Upon the case made by the record and bills of exception, our conclusion is that the judgment of the Circuit Court of Essex should be affirmed, with costs, and it is so ordered.

4. We now depart from the custom of silence upon points not decided because we think that a departure may be for the public good. A question, which is not and cannot be settled in the present case, is this: May the original petitioners, notwithstanding the act of March 20th, 1900 (*Pamph. L., p.* 85, § 15), abandon the proceedings, under the act, upon the payment of the landowner's costs and expenses, after the value of the land and the damages have been finally ascertained by the verdict of the jury? The point has been spoken to by counsel, but it is not within the case made by the record, and we intimate no opinion upon it. Nevertheless, we indicate the diverging lines of thought.

In *O'Neill* v. *Freeholders of Hudson,* 12 *Vroom* 161 (1897), this court (at *p.* 172), announced as a judicial principle, founded in reason, "that whenever land is sought to be taken for a public purpose, the public authorities, *in the absence of any statutory provision to the contrary,* have a reasonable time given to them, after the ascertainment of the expense of the scheme, to decide whether to accept or refuse the land at the price fixed." In the act of March 20th, 1900, above cited, there is found a statutory provision bearing upon the matter, but how far does that provision extend? On one side, it may be urged that it is an expression of the legislative will covering the whole subject-matter, and that, when the twenty days shall have elapsed, it must be assumed and held that the condemning party, whether public agent or not, has decided to take the land, let

the verdict of the jury on the value and damages be what it may. On the other hand, it may be said that the expression of the legislative will applies in cases where a report is made and filed, and no appeal has been taken therefrom; but that, when an appeal has been taken, both reason and authority require that, after the value and damages shall have been ascertained by the verdict and judgment, the condemning party—especially a public agent—should have time for consideration and decision.

For reasons already given, we intimate no opinion upon the question; nevertheless, it may well be that the public interest will be advanced by an authoritative solution of the difficulty. If this be true, it might be solved, for the future, in accordance with the wisdom of the legislature.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, GARRISON, FORT, GARRETSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL. 14.

*For reversal*—None.